## Commonwealth *v.* Cooper, Appellant.

*Criminal law—Larceny by bailee—Possession under claim of right —Act of March 31, 1860, P. L. 382, Section 108.*

In the trial of an indictment under section 108 of the Act of March 31, 1860, P. L. 382, charging defendant with larceny by bailee, of a motor truck, it appeared that defendant bought and made an initial payment on the truck, taking title in the name of a corporation to be subsequently organized. It also appeared that the organization of the corporation was never completed, and that the truck had been continually in the possession of defendant and had never been transferred to the proposed corporation, either de jure or defacto, so as to put it in the position of a bailor. The evidence disclosed that the defendant dealt with the truck under a claim of right to use it until the corporation was organized. In such case, the evidence was insufficient to sustain a conviction.

A mere mistake in dealing with a thing under a claim of right, however unfounded, is not sufficient to constitute larceny by bailee.

Argued October 31, 1927. Appeal No. 11, March T., 1928, by defendant from judgment of Q. S., Dauphin County, in the case of Commonwealth of Pennsylvania v. C. F. Cooper. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Reversed.

Indictment for larceny as bailee. Before HARGEST, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty, upon which judgment of sentence was passed. Defendant appealed.

*Error assigned,* among others, was the charge of the Court.

*A. J. Hershey,* and with him *Wickersham & Neely,* for appellant.

No printed brief for appellee.

OPINION BY LINN, J., March 2, 1928:

In this case no brief was filed by the district attorney. The appellant, convicted of larceny by bailee, asserts that the evidence was insufficient to convict. The prosecution grew out of alleged breaches of contract between the prosecutor and appellant, each asserting that the other was in default. Section 108 of the Criminal Code of 1860, P. L. 382, 409, provides: "If any person, being a bailee of any property, shall fraudulently take or convert the same to his own use, ...... or otherwise determine the bailment, he shall be guilty of larceny ......" see Com. v. Chathams, 50 Pa. 181; Krause v. Com., 93 Pa. 418. As defendant was indicted under that section, we look for evidence of the fraudulent intent to appropriate the subject of a bailment to his own use. Mere mistake in dealing with existing possession of a thing under a supposed claim of right, however unfounded such claim may be, is not sufficient. In this record essential elements of the crime charged are lacking.

Appellant, engaged in a jelly making business, agreed March 26, 1926, to sell to the prosecuting witness for $1,000, what the contract describes as "one-fourth interest in the Home Jelly and Preserving Company," the business to be incorporated under the title "Home Jelly and Preserving Company"; he seems also to have agreed to sell a like interest to Mr. Stein. Before the agreement was performed, but in contemplation of the transactions to be carried out, appellant bought and received possession of a motor truck (the

subject of the alleged larceny) to be paid for on the installment plan, an incumbrance of $630 in favor of some Investment Trust that apparently advanced the purchase price, being noted in the application for a certificate of title. The seller obtained for the buyer the automobile license and the certificate of title in the name of the "Home Jelly and Preserving Company," before a charter was applied for. Appellant kept the truck in a public garage in Harrisburg, using it as he chose. In April an application by the parties for letters patent was filed, which was granted April 28th. It does not appear definitely whether the business theretofore conducted by appellant was formally transferred to the corporation or not, perhaps not, as the Commonwealth's witnesses testified that no certificates of stock were ever issued; (we lay aside appellant's evidence that a certificate was issued to him alone, as well as his evidence that no certificates were issued to the treasurer and secretary because they did not pay their stock subscriptions). One or two corporate meetings were held, though the organization was not completed. Appellant was president, the prosecuting witness was treasurer, and Mr. Stein was secretary. The chief operations were to have been carried on in Dauphin County, but the charter was not recorded there as required by Act of April 29, 1874, P. L. 76. Mr. Stein testified that he had been "secretary for about a month," and attended only one corporate meeting when he abandoned the enterprise, saying "but I got disgusted and left town, I could see the way the business was heading." Asked whether the corporation was "in business now," he replied, "Well, it is defunct, according to the newspapers."

When appellant bought the truck, he made the initial payment due, and also paid the sums necessary to obtain the license to operate it and the certificate of title, and for those sums he was reimbursed two weeks before the charter was obtained, by a check drawn by

the prosecutor as treasurer of the Home Jelly and Preserving Company. Checks similar in form were drawn for automobile insurance and for the May and June installments due on the truck. The prosecutor testified that in August, 1926, he learned that the truck was in appellant's possession in Maryland. After appellant's arrest, the truck was taken by the lessor for default in payment of installments due.

Since the charter was not recorded in Dauphin County as required by law, the incorporation to transact business in that county was never completed: Guckert v. Hacke, 159 Pa. 303. There was, therefore, no corporation de jure to become bailor. Nor do we think that there was such a transaction with a corporation de facto as to constitute the Home Jelly and Preserving Company a bailor within the purview of the criminal law. There is no evidence that between the date when appellant bought the truck in the circumstances related, until he took it out of the state, there was any change in the control of the truck, its custody or use by him; no evidence (without now considering the failure to record the charter) to support a finding that the parties had completed performance of their original undertaking to sell and buy a half interest in appellant's business; without such evidence the jury could not find that there was a corporation de facto to make the contract of bailment, whatever appellant's civil obligations to his proposed vendees might be.

Under section 108, a "conviction ought not to stand, unless he was a bailee within the intendment of the act": Krause v. Commonwealth, supra, and Com. v. Williams, 93 Pa. Superior Ct. 92. The definitions of bailment quoted in the opinion filed in those cases which need not be repeated here, do not support a finding that the unfinished transaction described in this record constituted a bailment within section 108.

There was no moment of time when the personal possession resulting from appellant's purchase of the truck ceased and became the possession of the corporation de facto, or de jure, with a right in him only to use it for corporate purposes. Taking title as he did, in a name which would subsequently become the name of the contemplated corporation if the agreements of the parties were carried out, and obtaining reimbursement for the amounts paid by him on the obvious assumption that the rest of the contract would be performed, will not invest the corporation with title to the truck and divest appellant, in the absence of proof that the vendees performed their agreements, or at least offered to perform them, and this record does not show that they did either.

There is therefore, nothing to support the view that he fraudulently intended to appropriate the truck of any bailor to his own use; on the other hand, it appears that he dealt with the truck under a claim of right to use it without control until the consummation of the contracts of sale and the taking over of his business by the proposed corporation. The civil responsibility for that failure is not before us.

The motion to direct a verdict in favor of the appellant should have been granted. The judgment is reversed and the appellant is discharged.